# Third District Court of Appeal

## State of Florida

Opinion filed September 14, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-674
Lower Tribunal No. 17-2962
_____

**Seaway Biltmore, Inc., et al.,**
Petitioners,

vs.

**Grace Abuchaibe,**
Respondent.

On Petition for Writ of Certiorari from the Circuit Court for Miami-Dade County, Pedro P. Echarte, Jr., Judge.

Jackson Lewis P.C. and Pedro J. Torres-Díaz and Shayla N. Waldon, for petitioners.

Law Offices of Sina Negahbani and Sina Negahbani, for respondent.

Before LINDSEY, HENDON and LOBREE, JJ.

HENDON, J.

Petitioners Seaway Biltmore, Inc. ("Seaway") and The Biltmore Limited Partnership ("Biltmore") (collectively, the "Petitioners" or "Defendants"), file this petition for certiorari seeking to quash the trial court's non-final order adopting the special magistrate's report and imposing discovery sanctions on the Petitioners. We dismiss the petition for lack of certiorari jurisdiction.

Facts

Grace Abuchaibe ("Respondent" or "Plaintiff") was a reservations agent at the Biltmore from 2005 through 2011. In 2011, she was fired and filed a complaint with the EEOC for age-based discrimination and retaliation. In March 2012, the parties signed a negotiated settlement agreement ("NSA") resolving all of the claims. The NSA required the Biltmore to reinstate her to her former position, provide her with access to training, among other things, and also contained an anti-retaliation clause. In 2015, Respondent allegedly committed misconduct by engaging in a public argument with the Biltmore's chief information officer about an issue she was having with her computer. Citing prior episodes of misconduct, the

Biltmore terminated her.[1]  The Respondent then filed a two-count complaint against the Petitioners.

In her original complaint, the Respondent included claims for breach of contract based on the NSA and for unlawful retaliation under Title VII of the Civil Rights Act ("Title VII").  Her amended complaint included allegations that the Petitioners failed to consider her for, or outright rejected her for, multiple promotions or job transfer opportunities and issued her sham warnings. Respondent also alleged for the first time, in paragraph 14 of the amended complaint, that the Petitioners failed to provide her with, or disregarded her requests for, a parking space in the covered garage and failed to timely/properly assist her with computer issues and/or intentionally caused work problems for her.

The Respondent asked for various records and documents during discovery. The Petitioners responded with objections, and failed to timely produce, or produce at all, several classes of discovery items.  Further, the Respondent alleged that the Petitioners had deliberately failed to preserve certain records, which the Petitioners allege have been lost or inadvertently

[1] The Respondent then filed a complaint with the EEOC for age discrimination and retaliation. In 2016, the EEOC issued a notice of right to sue, but was unable to conclude that the Respondent established statutory violations.

deleted. After an unsatisfactory response to a second request for production, which contained unproduced material that overlapped with the first request, the Respondent filed a motion to compel production.

After hearings on the Respondent's motion to compel production, the trial court granted the Respondent's motion and ordered the Petitioners to comply by producing all responsive documents. The trial court specifically found that the Petitioners had hindered and delayed discovery. The trial court appointed a special magistrate to consider all further discovery matters and to issue a report and recommendation on the imposition of sanctions.[2]

The special magistrate heard testimony over four days. The special magistrate found that some of the discovery not supplied by the Petitioners was not intentional, but rather a result of the application of existing document retention policies and, under the circumstances, sanctions were not warranted. On the other hand, the special magistrate concluded that

---

[2] In its order, the trial court stated:

> The Court specifically again finds that the Defendants have played games with discovery, and failed to produce clearly relevant items. The Court is not amused by Defendant's [sic] arguments and responses, and the ongoing efforts by the Defendants to hinder and delay Plaintiff's legitimate and long outstanding discovery.

the Petitioners' outright deletion of, or failure to maintain, other materials was troublesome. The magistrate recommended imposition of sanctions for spoliation of evidence, finding:

> With respect to the IT tickets and related emails requested by Plaintiff that were not produced because of their unavailability due to the June, 2016 change in computer software and permanent deletion of such records by Defendants, **the Special Magistrate specifically finds that (1) the evidence existed at one time; (2) Defendants had a duty to preserve the evidence; and (3) the evidence was crucial to the Plaintiff's prima facie case in this matter.**
>
> The undersigned also finds that **Defendants were well-aware of their obligation to preserve such evidence** and that Defendants' destruction of these IT records in 2016 was with knowledge of its consequences to Plaintiff in proving her claims. The Special Magistrate finds that **such actions by Defendants were done, in whole or in part, with the intent to deprive Plaintiff of the information lost.** Accordingly, the Special Magistrate finds and recommends that the Court, pursuant to **Fla. R. Civ. P. 1.380(e)** and Florida law regarding spoliation of evidence, **presume that the lost IT information was unfavorable to Defendants and instruct the jury that it must presume that the absent information was unfavorable to Defendants.**

(emphasis added). The special magistrate also recommended imposing sanctions against the Petitioners for their violation of the trial court's orders to timely produce all the documents ordered by certain deadlines. The recommended sanctions included charging the Petitioners with the costs

and fees of the special magistrate, and half of the Respondent's legal fees for the four days of hearings before the special magistrate.

The Petitioners filed their objections to the report, the sanctions imposed, and specifically to the recommendation that the trial court instruct the jury that it should presume the Petitioners intentionally destroyed IT records to deprive the Respondent of relevant information. After due consideration, the trial court approved, ratified, and adopted the special magistrate's report and recommendation.

On petition for certiorari, the Petitioners contend that instructing the jury that it must presume that the unproduced emails and IT documentation was unfavorable to the Respondent creates an unrebuttable presumption, and that such a jury instruction will preclude the Petitioners from offering material evidence, causing irreparable injury to the Petitioners that cannot be remedied on appeal. We disagree.

"When the trial court reviews the magistrate's report to resolve an exception, . . . a trial court must accept the magistrate's findings of fact if they are supported by competent, substantial evidence." Coriat v. Coriat, 306 So. 3d 356, 358 (Fla. 3d DCA 2020) (citing In re Drummond, 69 So. 3d 1054, 1056 (Fla. 2d DCA 2011)); Martinez-Olson v. Est. of Olson, 328 So.

6

3d 14, 18 (Fla. 3d DCA 2021) (holding a trial court's decision to accept or reject a general magistrate's report and recommendations is reviewed for an abuse of discretion). Thus, this Court's certiorari review of the trial court's non-final order is limited to whether the trial court departed from the essential requirements of law in conducting its review of the special magistrate's report and recommendations, resulting in irreparable harm to the petitioner that cannot be remedied on direct appeal. S.V. v. Dep't of Child. & Fams., 178 So. 3d 421, 423 (Fla. 3d DCA 2015). The establishment of irreparable harm is a condition precedent to invoking certiorari jurisdiction. Miami–Dade Cnty. v. Dade Cnty. Police Benevolent Ass'n, 103 So. 3d 236, 238 (Fla. 3d DCA 2012).

We consider whether the trial court's adoption of the special magistrate's recommendation – that the jury be instructed to presume the missing documentation was intentionally destroyed – constitutes irreparable injury that cannot be remedied on appeal. We conclude it does not.

In Public Health Trust of Dade County v. Valcin, 507 So. 2d 596, 599 (Fla. 1987), the Florida Supreme Court struck down the conclusive presumption of liability when records are shown to be missing due to deliberate acts or omissions of the defendant. Valcin adopted a rebuttable

7

presumption of negligence in a medical malpractice action premised on a showing that missing documents hindered the plaintiff's "ability to establish a prima facie case." Id. at 599. According to Valcin, where evidence necessary to prove a prima facie case is missing due to actions of a party, an essential element of a claim may be presumed, shifting the burden to the opposing party to dis-prove that element. Compare, Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., 881 So. 2d 565, 581–82 (Fla. 3d DCA 2004) (finding Valcin inapplicable where defendants' ability to establish a prima facie case was not hindered by the loss of the documentation). "In those extremely rare instances that the evidence establishes an intentional interference with a party's access to critical . . . records, a wide range of sanctions is available to the trial court under Florida Rule of Civil Procedure 1.380(b)(2). Valcin, 507 So. 2d at 599; see also Mercer v. Raine, 443 So. 2d 944 (Fla.1983).

In Martino v. Wal–Mart Stores, Inc., 908 So. 2d 342, 346 (Fla. 2005), the Florida Supreme Court further explained that the presumption only applied when "the absence of the records hinders [the plaintiff's] ability to establish a prima facie case." Id. This rebuttable presumption shifted the burden of proof under section 90.302(2) so that the presumption "is not overcome until the trier of fact believes that the presumed [negligence] has

8

been overcome by whatever degree of persuasion is required by the substantive law of the case." Id. at 600–01 (quoting Caldwell v. Div. of Ret., 372 So. 2d 438, 440 (Fla. 1979)).

In Pena v. Bi-Lo Holdings, LLC, 304 So. 3d 1254 (Fla. 3d DCA 2020), the plaintiff claimed spoliation because she made a pre-suit request to preserve surveillance footage and the defendant neglected to preserve the relevant physical evidence captured by the cameras. This Court ultimately affirmed the lower court's dismissal of the spoliation claim, but acknowledged that "there is some precedent supporting the proposition that notification of potential litigation triggers the obligation to preserve crucial evidence." Id. at 1258; see Nationwide Lift Trucks, Inc. v. Smith, 832 So. 2d 824, 826 (Fla. 4th DCA 2002) (stating that "[c]ases in which evidence has been destroyed, either inadvertently or intentionally, are discovery violations" that may be subject to sanctions). Even in the absence of a legal duty, the spoliation of evidence may result in an adverse inference against the party that discarded or destroyed the evidence. League of Women Voters of Fla. v. Detzner, 172 So. 3d 363, 391 (Fla. 2015). If the evidence was negligently destroyed, a rebuttable presumption of liability may arise. Id. at 347; see also Golden Yachts, Inc. v. Hall, 920 So. 2d 777, 781 (Fla. 4th DCA 2006) ("[A]n adverse inference may arise in any situation

9

where potentially self-damaging evidence is in the possession of a party and that party either loses or destroys the evidence.") (quoting Martino at 1257)). (emphasis added).

In the Petitioners' case, the trial court found competent, substantial evidence in the record that the Petitioners were aware of potential litigation via the NSA, and had a duty to preserve the relevant IT information. The trial court found the record sufficient to support the presumption[3] that the

---

[3] As explained in Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., 881 So. 2d 565, 582 (Fla. 3d DCA 2004):

> A presumption differs from an inference. An inference is a logical deduction of fact that the trier of fact draws from existence of another fact or group of facts. Whether the inferred fact is found to exist will be decided by the trier of fact. A presumption is stronger; it compels the trier of fact to find the presumed fact if it finds certain basic facts to be present. Even if a court finds that a presumption is not present in a particular situation, an inference of the same fact can be drawn if it is supported logically by the evidence.

> Charles W. Ehrhardt, Florida Evidence § 301.1, at 89–90 (2003) (footnotes omitted) (emphasis added); see also 2 J. Wigmore, Evidence § 285, at 192 (James H. Chadbourn rev., 1979).

> Unlike a Valcin presumption, an inference generally will not support a jury instruction:

>> It is important to note that an adverse inference from the failure to produce evidence is different than the Valcin [Public Health Trust of Dade County v. Valcin, 507 So. 2d 596 (Fla. 1987)] rebuttable presumption. If the actions of the opposing party cause evidence to be lost that is necessary to prove a prima facie case, the Valcin presumption shifts the burden of proof to ensure that a jury decides the issue of negligence. In essence, the Valcin presumption supplies an

10

Petitioners intended to deprive the Respondent of relevant information, and the trial court did not abuse its discretion by adopting the special magistrate's report and recommendation. Nothing in the case law indicates that at this point, a negative presumption instruction will preclude the Petitioners' ability to present evidence and argument against the presumption that the loss of IT records was intentional; certainly, the trial court has not barred the Petitioners from countering the presumption at trial.[4] As there is no indication that the negative presumption will cause

---

essential element of the case—negligence—and shifts to the defendant the burden of proving that he or she was not negligent. The adverse inference merely allows counsel to argue to the jury the inference that the evidence was lost because it was damaging to the opposing party's case. The jury may accept or reject the inference as it sees fit.

6 Florida Practice, Personal Injury & Wrongful Death Actions § 26.6 (2004 ed.)

[4] The Petitioners rely on cases that are not factually applicable, cases in which an adverse presumption was not an issue or instruction, but in which the trial court outright barred presentation of critical testimony or evidence. See, e.g., Solonina v. Artglass Int'l, LLC, 256 So. 3d 971, 972 (Fla. 3d DCA 2018) (finding irreparable harm where trial court barred the plaintiff from taking depositions of key witnesses, and to be present at her own trial); Marrero v. Rea, 312 So. 3d 1041, 1048 (Fla. 5th DCA 2021) (finding irreparable harm where trial court barred party from critical discovery); Beekie v. Morgan, 751 So. 2d 694, 698 (Fla. 5th DCA 2000) (finding error was not remediable on appeal since there was no practical way to determine after judgment how denial of opportunity to depose defendant affected outcome of trial).

irreparable injury that cannot be remedied on appeal, the Petitioners have not met their burden on petition for certiorari.

Finally, the trial court's ratification and acceptance of the special magistrate's fees and costs recommendations does not amount to irreparable injury. The determination that an award of fees as a discovery violation sanction is appropriate does not in itself demonstrate material harm or irreparable injury. Rydell v. Rutter, 834 So. 2d 883, 884 (Fla. 5th DCA 2002). A partial award of costs and fees as sanctions (especially where there was clear warning that severe sanctions could be imposed) for the failure to timely and fully comply with the court's discovery orders is not an abuse of discretion. See Malone v. Costin, 410 So. 2d 569 (Fla. 1st DCA 1982). In Malone, the First District Court of Appeal held that an interlocutory order granting attorney's fees and costs on a motion to compel discovery was not a non-final order which could be reviewed by appeal or certiorari. The First District noted that when seeking a writ of certiorari, petitioner has a heavy burden of showing that there was a clear departure from the essential requirements of law which would result in irreparable harm. The First District stated that even if compliance with a court order is costly, that, in and of itself, would not provide a basis for certiorari review.

Indeed, as the fees and costs in this case have not yet been reduced to a fixed amount, the Petitioners have shown no irreparable injury at this point.

We therefore dismiss the petition for certiorari based on the Petitioners' failure to prove the threshold element of irreparable injury on either of the grounds presented.

Petition dismissed.